## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SENTRY INSURANCE, A MUTUAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3013 |
| | ) | |
| KATHERINE RICE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, United States District Judge.

This cause is before the Court on the Motion for Summary

Judgment (Motion) (d/e 23) filed by Plaintiff Sentry Insurance, a Mutual

Company.  In the Motion, Plaintiff argues Defendant Katherine Rice

concealed and misrepresented numerous material facts in her personal

property claim, which voids all coverage under the insurance policy.   For

the reasons that follow, Plaintiff's Motion is DENIED.

## I.  BACKGROUND

On October 18, 2006, a fire occurred at Plaintiff's home located at

214 S. Paul Street, Springfield, Illinois (the subject property).  At the

time of the fire, the subject property was covered by a homeowner's policy issued by Defendant to Plaintiff (the Policy).  Plaintiff lived in the subject property with her six children, ages approximately 3 to 20.

## A.    Background Facts

The Policy provided a limit of liability in the amount of $145,250 for personal possessions.  For personal possessions, the Policy provided in relevant part as follows:

> <u>For losses to **your** personal possessions</u> . . . we have the option to repair or replace **your** property.
>
> We'll pay the cost of repair or replacement of **your** damaged personal possessions or a loss to articles described in a schedule attached to this policy without deduction for depreciation unless specifically described below.  We'll pay the smallest of the following amounts:
>
> - Replacement cost at the time of loss;
>
> - The actual cost **you** incur to repair the personal possession;
>
> - Any special limits on certain property described in this policy;
>
> - The limit of coverage shown on the declarations page or on an attached schedule.

> When the cost of repair or replacement for the
> damaged property is more than $500, we will pay
> replacement cost less depreciations until actual
> repair or replacement is completed.  (Emphases in
> original.)

The Policy defines "you" and "your" to include (1) the person whose name appears on the declaration page; (2) anyone under the age of 21 or anyone under the age of 25 who is unmarried and a full-time student; and (3) "**your** relatives, if a resident of **your** household."  (Emphases in original.)

In December 2006, Defendant submitted to Plaintiff a 39-page Personal Property Inventory Form (Inventory) with a cover sheet.  The Inventory listed the items of property Defendant believed were a total loss, the age of the property, and the current replacement cost for each item of property.  The total estimated replacement cost of all the items listed by Defendant was $409,515.79.  On the cover sheet, Defendant indicated that the prices listed were approximate amounts, that some prices might be slightly higher or slightly lower, and that she was unable to value certain items.  Defendant also indicated that she had additional

contents that were a loss, but she was concluding her Inventory.

Defendant also completed a Sworn Statement in Proof of Loss (Proof of Loss) dated December 23, 2006.  In the Proof of Loss, Defendant completed blanks on a preprinted form.   In paragraph 7, which read, "The whole loss and damage was . . ." Defendant wrote: "Property $102,437.71, contents 145,250."  In paragraph 8, which read "The amount (less Ded. of $_____) claimed under this policy is $_____ ," Defendant wrote "1,750.00" for the deductible and "unknown at this time" for the amount claimed under the Policy.

In January 2009, Plaintiff filed a Complaint for Declaratory Judgment.  Plaintiff alleged Defendant was barred from recovery under the Policy because she violated two Policy provisions by : (1) failing to cooperate and comply with her responsibilities in the claim and investigation; and (2) intentionally concealing and/or misrepresenting material facts or circumstances, engaging in fraudulent conduct, dishonest or criminal conduct, or making false statements surrounding the fire loss, the claim presented, and the insurance.   Defendant filed a

Counterclaim alleging breach of contract and vexatious refusal to pay.
Defendant also alleges that as a result of Plaintiff and Plaintiff's agents'
actions, Plaintiff has waived the right to contest Defendant's claim for
monies due under the Policy.

**B.    The Motion for Summary Judgment**

In March 2011, Plaintiff filed the Motion at issue herein.  The
Motion is based on the "Concealment Or Fraud" provision of the Policy:

> **Concealment Or Fraud**
>
> This entire policy will be void with respect to all
> persons insured under this policy if, whether
> before or after a loss, any person insured under
> this policy has:
>
> - Intentionally concealed or misrepresented
>   any material fact or circumstance; or
>
> - Intentionally caused a loss; or
>
> - Engaged in fraudulent, dishonest[,] or
>   criminal conduct; or
>
> - Made false statements;
>
> relating to this insurance.

The Policy also contains the following Endorsement:

The following is added to the **Concealment Or Fraud** section:

> The Concealment Or Fraud Condition does not apply once the policy has been in effect for one year or one policy period, whichever is less. However, we may cancel or nonrenew this policy in accordance with the terms of the Cancellation or Renewal provisions of the policy.

Plaintiff asserts the undisputed facts demonstrate Defendant intentionally concealed and misrepresented numerous material facts in her claim, which voids all coverage under the insurance policy. Plaintiff also seeks judgment as a matter of law on Defendant's counterclaim.

Specifically, Plaintiff argues the evidence demonstrates Defendant misrepresented her personal property contents claim. Plaintiff asserts that it was impossible that Defendant accumulated more than $409,000 worth of personal property between her 2001 bankruptcy filing–which listed personal property totaling $650–and the date of the fire. Plaintiff also points to Defendant's March 2005 divorce proceedings, during which Defendant listed no household goods or furniture on her financial affidavit. Plaintiff also asserts that given Defendant's income–$37,755 in

adjusted gross Income in 2004 and $5,547 in adjusted gross income in 2005– and her banking records– which reflected negative or near negative balances and overdraft fees–Defendant could not have purchased over $409,000 in personal property in five years.

C.    Facts Relating to the Motion

The facts relevant to the Motion are as follows.

In April 2001, Defendant filed a Voluntary Petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Central District of Illinois.  On August 6, 2001, she was discharged under Chapter 7.  On August 13, 2001, Defendant and her husband filed a Voluntary Petition for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Central District of Illinois.  Defendant's Schedule B, filed August 22, 2001, listed a total of $650 in personal property–$400 for household goods and $250 for wearing apparel.

In August 2002, the Bankruptcy Court granted Defendant and her husband permission to obtain a Small Business Administration (SBA) Disaster Loan in the amount of $46,000 to repair or replace property

damaged in April 2002.  The amount borrowed included $18,000 to repair or replace disaster damaged personal property.  Defendant completed the Chapter 13 Plan and was discharged October 5, 2006, approximately two weeks before the fire.

In March 2005, Defendant filed a Petition for Dissolution of Marriage from her husband.  The Affidavit of Income, Expenses, Assets, and Debts filed March 15, 2006, listed no household goods and furniture.

In April 2007,  April 2008, and August 2008, Defendant was examined under oath by Plaintiff.  Defendant testified she prepared the Inventory.  For the age of each item she listed, Defendant put the date she acquired it.  For the dollar figure, Defendant put the current replacement cost.

According to Defendant, she asked Plaintiff's adjuster whether anyone would help her complete the form, and she was told no. Plaintiff's adjuster told her to go to the store or look on the Internet to find out how much it would cost to buy a new item.  Plaintiff's adjuster

also told Defendant to "try to guesstimate on what it may cost", then to

bring the worksheet back, and they would go over it together. According

to Defendant, she and the adjuster went over the first draft. When she

prepared a second draft, the adjuster told her that he "didn't have

anything else to do with it" and to send the Inventory to the main office[1].

Defendant testified she bought a large number of items between

filing for bankruptcy and the fire, describing herself as a "big time

spender" and stating "I always spend. I just spend, spend, spend."

Defendant also explained that the items on the Inventory included items

that were gifts and items bought used from other individuals and at

auction.

Defendant testified that between her bankruptcy and the fire, she

once received between $10,000 and $20,000 from her ex-husband and

---

[1] Defendant also attempts to rely on a report prepared by Michael Dohm of
MidAmerica Loss Services regarding his review of the Inventory. However, the report
is not authenticated. See e.g., Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492,
495 (7th Cir. 2006) (district court properly considered reports authenticated by
affidavit); Samaritan Health Center v. Simplicity Health Care Plan, 459 F.Supp.2d
786, 799 (E. D. Wis. 2006) ("to get an expert's opinion into the record for summary
judgment usually involves use of an affidavit or deposition testimony). Therefore,
this Court does not consider it.

"sometimes" received sums of $2,000 to $3,000 from her sister. Defendant's ex-husband also paid child support and paid some of Defendant's monthly bills.

When asked about the discrepancy between the filing of the Affidavit of Income, Expenses, Assets, and Debts in the dissolution proceeding–which listed no household goods or assets–and the Inventory, Defendant testified her attorney told her to stop filling out the forms and that she, the attorney, would fill them out. Defendant also testified that household goods should have been listed.

At the April 2007 deposition, when asked the amount she was asking for from the insurance company, Defendant responded, "[w]hatever I'm entitled to."

## II. JURISDICTION AND VENUE

Plaintiff is a corporation organized and existing under the laws of Wisconsin, with its principal place of business located in Stevens Point, Wisconsin. Plaintiff is licensed and authorized to do business as an insurance company in Illinois. Defendant is a resident of Sangamon

County, Illinois.  Because complete diversity exists, and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).  Venue exists in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred here.  See 28 U.S.C. §1391(a)(2).

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed.R.Civ.P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).

## IV.  ANALYSIS

As this case is founded on diversity jurisdiction, the Court "must

apply the law of the state as it believes the highest court of the state

would apply it if the issue were presently before that tribunal." State

Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001).

Absent controlling authority from the State's highest court, federal courts

exercising diversity jurisdiction may consider decisions of the State's

lower courts, courts of other jurisdictions, and other persuasive authority.

See Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414,

417 (7th Cir. 1997).

A.    The Policy Endorsement Issue

Neither party originally addressed the Endorsement, which provides

as follows;

> The following is added to the **Concealment Or
> Fraud** section:
>
> The Concealment Or Fraud Condition does not
> apply once the policy has been in effect for one
> year or one policy period, whichever is less.
> However, we may cancel or nonrenew this policy
> in accordance with the terms of the Cancellation
> or Renewal provisions of the policy.

This Court asked the parties to provide supplemental briefing, and they

have done so.  See Fed.R.Civ.P. 56(f) (court may grant summary judgment in favor of the nonmovant after giving notice and a reasonable time to respond).   Defendant argues the Endorsement provision applies and she is entitled to partial summary judgment on the portion of Plaintiff's claim relying on the Fraud Or Concealment provision.  Plaintiff argues the Endorsement provision does not apply.

The construction of a insurance contract is a question of law. Chatham Corp. v. Dann Ins., 351 Ill. App. 3d 353, 358 (2004).  The same rules of construction that apply to other types of contracts also apply to insurance contracts.  Country Mut. Ins. Co. v. Teachers Ins. Co., 324 Ill. App. 3d 246, 248-49 (2001).  That is, this Court must ascertain and give effect to the intent of the parties, which is determined by examining the language of the contract.  Stark v. Illinois Emcasco Ins. Co.,  373 Ill. App. 3d 804, 807 (2007).   In doing so, this Court construes the policy as a whole, taking into account the type of insurance, the risks undertaken, and the purpose of the contract. Country Mut. Ins. Co., 324 Ill. App. 3d at 248-49.  "A court must read

the provision in its entire factual context and not in isolation." <u>Allstate</u> <u>Ins. Co. v. Amato</u>, 372 Ill.App.3d 139, 144-45 (2007).   If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning.  <u>Stark</u>, 373 Ill. App. 3d at 807.  If the terms of the policy are susceptible to more than one meaning, then the terms are ambiguous.  <u>Pekin Ins. Co. v. Wilson</u>, 237 Ill. 2d 446, 456 (2010), <u>citing</u> <u>American States Ins. Co. v. Koloms</u>, 177 Ill. 2d 473, 479 (1997).  Ambiguities are construed against the insurance company.  <u>Id.</u>

Plaintiff argues the Endorsement merely incorporates Section 154 of the Illinois Insurance Code which precludes the rescission of a policy based on misrepresentations made in the negotiation of a policy that has been in effect for more than one year.  <u>See</u> 215 ILCS 5/154 (noting circumstances under which a policy may be rescinded for a misrepresentation or false warranty made by an insured in the negotiation of a policy of insurance or breach of a condition of such policy).  According to Plaintiff, the Endorsement does not apply because the misrepresentations in this instance were not made in the application

for insurance.

However, the plain language of the Endorsement is not so limited. The Endorsement does not reference section 154 and does not limit the applicability of the endorsement to misrepresentations made in the negotiation for a policy of insurance.

Instead, the plain language of the Endorsement provides that the Concealment Or Fraud Condition does not apply if the policy has been in effect the lesser of one year <u>or</u> one policy period. The Endorsement says nothing about limiting the Endorsement to misrepresentations made in the negotiation of the policy.

This Court agrees, however, with Plaintiff's additional argument that the Policy at issue (October 2006 through October 2007) was in effect for less than one year. The Policy term commenced October 3, 2006, and the fire occurred October 16, 2006.

The Endorsement also provided, however, that the Concealment Or Fraud Condition does not apply if the policy has been in effect for "one policy period." The parties do not expressly address the "one policy

period" language and do not provide any explanation for the meaning of the term "one policy period" in the Endorsement.

The Policy does not define "policy period." Policy period could refer to a policy period less than one year, meaning that the Concealment Or Fraud provision does not apply if, in the case of a nine-month policy, the policy has been in effect for one nine-month policy period. Policy period could also refer to instances where a policy one year in length or less is renewed.

Here, Defendant previously had a policy of insurance with Plaintiff that covered the period of October 3, 2005, through October 3, 2006. The policy was apparently renewed for the period of October 3, 2006, through October 3, 2007.

"In Illinois, the renewal of an insurance policy is generally conceived to be a new contract." Doe v. Illinois State Medical Inter-Insurance Exchange, 234 Ill. App. 3d 129, 137 (1992); see also Burmac Metal Finishing Co. v. West Bend Mutual Ins. Co., 356 Ill. App. 3d 471, 480 (2005) (renewal of a policy is a new contract but unless otherwise

provided, "the terms and conditions of the original policy become part of the renewal contract of insurance"). Although the Policy covering 2006 through 2007 was a new contract of insurance, it is unclear whether that is considered the second policy period. <u>See</u>, <u>e.g.</u>, <u>Executive Risk Idemnity, Inc. v. Chartered Benefit Services, Inc.</u>, 2005 WL 1838433, *9 (N.D. Ill. 2005) (noting that the renewal of a policy does not create a single policy period for claims reporting purposes).

Here, both policies contain the same policy number: 26-68720-53. Both policies had the same terms but had different coverage limits and premiums. The facts suggest that Defendant was covered by policy No. 26-68720-53 from October 2005 to October 2006 (one policy period) and then by policy No. 26-68720-53 from October 2006 through 2007 (second policy period).

Because the parties did not adequately address this issue, the Court declines to enter summary judgment in favor of either party on this issue at this time. However, the issue raised by this Policy provision is sufficient to deny summary judgment in favor of Plaintiff.

## B.     Other Questions of Fact Remain

Even if the Endorsement does not apply, genuine issues of material fact remain regarding whether Plaintiff can void the Policy pursuant to its Concealment Or Fraud provision.  The Policy's Concealment Or Fraud provision provides that the entire policy is void if an insured person "[i]ntentionally concealed or misrepresented any material fact or circumstance."

Plaintiff asserts that Defendant "intentionally concealed and misrepresented numerous material facts in her claim, which voids all coverage under the insurance policy."  Plaintiff claims Defendant "grossly inflated her claimed losses in her Sworn Proof of Loss, beyond any reasonable explanation."  Despite declaring in 2001 that she had only $650 in personal property (bankruptcy court) and in 2006 that she had no household goods or furniture (divorce court), Defendant claimed in her December 2006 Proof of Loss that she had over $409,00 in personal property that was destroyed by fire.  Plaintiff further asserts Defendant could not have obtained that much personal property given her income.

Defendant first responds to Plaintiff's Motion by arguing that the Inventory was not part of the Proof of Loss.  Defendant notes the actual Proof of Loss states that the amount claimed under the policy is "unknown at this time."  Therefore, according to Defendant, no misrepresentation was made in the Proof of Loss.

The Proof of Loss required Defendant to assert, in part that:

> no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

Defendant testified she was told by Plaintiff to complete the inventory.  The cover sheet Defendant sent to Plaintiff with the Inventory indicates she provided the Inventory "[p]er your request."  Therefore, Defendant was required to furnish the Inventory and it is considered part of the Proof of Loss.

Defendant responds to Plaintiff's remaining arguments in support of its Motion by asserting that genuine issues of material fact exist

whether Defendant's conduct was wilful and done with the intent to deceive.  Defendant argues a reasonable jury could determine Defendant made an honest effort in presenting her claim.

Under Illinois law, a misrepresentation in a proof of loss can render the policy void under a policy's concealment or  fraud provision.  Lykos v. American Home Ins. Co., 609 F.2d 314, 316 (7th Cir. 1979) (affirming district court's granting of "judgment non obstante veredicto" after jury returned verdict for the insured).  "[T]o void an insurance policy, a misrepresentation or concealment of material facts by the insured must be willful and with the intent to deceive and defraud the insurer." Bloomgren v. Fire Ins. Exchange, 162 Ill. App. 3d 594, 600 (1987), citing Weininger v. Metropolitan Fire Ins. Co., 359 Ill. 584, 598 (1935).

"Ordinarily, fraud and false swearing is a question of fact for the jury but it becomes a question of law when the insured's misrepresentations cannot in any way be seen as innocent."  Folk v. National Ben Franklin Ins. Co., 45 Ill. App. 3d 595, 597 (1976) (wherein the insured sold equipment after the fire but included the equipment on

his proof of loss); see also Passero v. Allstate Ins. Co., 196 Ill. App. 3d 602, 610 (1990); Lykos, 609 F.2d at 315.  "If some effort is displayed at making an honest valuation of a loss, the court should not find fraud or misrepresentation as a matter of law but should submit the question to the jury."  Fitzgerald v. MFA Mutual Ins. Co., 134 Ill. App. 3d 1007, 1010 (1985).

In this case, questions of fact remain.  Taking the facts in the light most favorable to Defendant, a reasonable jury could find that Defendant did not intentionally conceal or misrepresent a material fact in the Inventory and Proof of Loss.

Five years had passed between Defendant's bankruptcy petition and the fire.  Defendant testified she was a big spender.  Plaintiff testified that for the "age" of each item on the Inventory Form, she put the date she acquired the item.  According to the Inventory Form, all the items, with the exception of approximately 20, were acquired within the past five years.

Defendant further testified she received a large number of items as

a gift or purchased them used from other individuals or at auction. Defendant listed the replacement value of the items because that is what she was told to do.  In addition, the Policy provides that Plaintiff would pay the replacement cost at the time of loss, if that amount is smaller than the cost to repair, the special limits on certain property, or the limit of coverage.  The language in the Policy does not specifically indicate that the replacement cost would be for a like item.  See, e.g., Santizo v. Allstate Property & Casualty Ins. Co., 2010 WL 2735649, *3 (E. D. Mo. 2010) (summary judgment granted in favor of the insurance company where the insured testified she purchased the items for amounts vastly lower than the values listed in the inventory report and the policy provided that the replacement payment would be based on the amount necessary to replace the property with similar property of like kind and quality).

Defendant also testified she asked Plaintiff for help in preparing the Inventory.  The evidence, taken in the light most favorable to Defendant, suggests she made some effort at making an honest valuation of a loss.

See Fitzgerald, 134 Ill. App. 3d at 1010 (reversing judgment on directed

verdict in favor of insurance company; in light of insured's testimony that

he did not understand the proof of loss forms, asked for help, and

received none, the court should have let the jury decide whether the

insureds knowingly made false representations in an attempt to defraud).

Defendant has also proposed other explanations for the alleged

discrepancies. Defendant notes that the Inventory listed all of the

personal belongings of her six children-- who lived in the home, but that

the bankruptcy filing did not. She also testified at her deposition that

her Affidavit of Income, Expenses, Assets, and Debts filed in her divorce

proceedings should have contained household items but that her attorney

told her to stop filling out the document. All these facts raise a genuine

issue of material fact whether Defendant intentionally concealed or

misrepresented a material fact in the Inventory and Proof of Loss. See,

e.g., Trzcinski v. American Casualty Co., 953 F.2d 307, 314 (1992)

(finding the evidence viewed in the light most favorable to the insured

did not warrant removing the question of fraud and false swearing from

the jury given the insured's testimony and explanations).

Each of the cases cited by Plaintiff in support of its claim that Defendant misrepresented material information in her Proof of Loss as a matter of law are distinguishable. Several of the cases involved a discrepancy between a bankruptcy filing and an insurance inventory or proof of loss but the time between the two was much shorter than exists here. In addition, in many of those cases, the courts noted that the insured did not provide an explanation for the discrepancy. See Liberty Mutual Fire Ins. Co. v. Scott, 486 F.3d 418, 422-23 (8th Cir. 2007) (affirming judgment as a matter of law entered after the close of evidence; bankruptcy filing was made one year prior to insurance claim and the insured failed to present evidence of mistake or inadvertence); Williams v. Farmers Ins. Co., Inc., 2011 WL 96672 (W. D. Ark. 2011) (granting insurance company's motion for summary judgment where only two years had passed between bankruptcy filing and insurance claim and the insured provided no explanation for the discrepancy; the insured also admitted she had no property worth over $14,000, which was contrary to

her submission to the insurance company); <u>Santizo</u>, 2010 WL 2735649, at *3 (granting summary judgment in favor of insurance company on the insured's vexatious refusal to pay claim; court found the discrepancy between the proof of loss and bankruptcy valuation 1 ½ years earlier was too great for a jury to find anything but a misrepresentation in the proof of loss absent evidence of a mistake on either filing or a great number of purchases following the bankruptcy); <u>Mathes v. Mid-Century Ins. Co.</u>, 2008 WL 2439744, *2 (E. D. Mo. 2008) (granting summary judgment in favor of insurance company; the insured's representations in bankruptcy filings six months before the fire varied greatly from his insurance claim and the insured presented no evidence to suggest there was a mistake in his bankruptcy filings, or that he accumulated additional personal property after his bankruptcy filing, or that there was a mistake in his proof of loss).

The remaining cases cited by Plaintiff are also distinguishable. In <u>Passero</u>, 196 Ill. App. 3d at 610, the insureds did not deny that they falsified a receipt to show that the insureds purchased video equipment.

No such evidence exists here.

In State Farm General Ins. Co. v. Best in the West Foods, Inc., 282 Ill. App. 3d 470, 479 (1996), the appellate court affirmed the district court's grant of judgment in favor of the insurance company after the close of the insured's case. The insureds' 1987 tax return and February 1988 financial statement contained lower inventory values than that submitted after a July 1988 explosion. Best in the West, 282 Ill. App. 3d at 479. Again, the time period between the two different values in State Farm – between one year and 5 months– is much shorter than the five year period between Defendant's bankruptcy filing and the fire.

Finally, this case is distinguishable from Tenore v. American and Foreign Ins. Co. of N.Y., 256 F.2d 791 (1958), cited by Plaintiff in its Reply. In Tenore, following a trial, judgment was entered in favor of the insured and the Seventh Circuit reversed. The Seventh Circuit had before it evidence that 71 of the guns were valued as new despite being manufactured 50 years earlier, and having cracked stocks, no stocks, and missing parts. Tenore, 256 F.2d at 794. The Seventh Circuit found the

testimony of the individual who valued the properly was "obviously false" and the district court had found the same testimony "fantastic." 256 F.2d at 793. Here, given the explanations by Defendant, the Court cannot at this point find that the listings on the Inventory and valuation of the property was "obviously false."

## V. CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment (d/e 23) is DENIED.

ENTERED: July 20, 2011

FOR THE COURT:

                    s/Sue E. Myerscough
                    SUE E. MYERSCOUGH
                    UNITED STATE DISTRICT JUDGE